**John Everette KIPP, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 6–90–062–CR.**

Court of Appeals of Texas,
Texarkana.

Dec. 11, 1990.

Rehearing Overruled Jan. 8, 1991.

Audley H. Heath, Houston, for appellant.

John B. Holmes, Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

John Everette Kipp was convicted of indecency with a child and assessed a punishment of five years' confinement, probated. The sufficiency of the evidence is not challenged. In this appeal Kipp contends that the trial court erred in refusing his request to perfect an offer of proof; in allowing testimony which allegedly bolstered the victim's and another witness' testimony; in admitting hearsay evidence; and in allowing evidence of extraneous offenses. We overrule these contentions and affirm the judgment.

The indictment alleged that Kipp touched the genitals and placed his finger in the anus of the victim, his three and a half year old daughter. The victim testified at trial. Kipp denied the allegations.

In Kipp's first two points of error, he contends that the trial court erred in refusing to allow him to perfect an offer of proof concerning the child victim's competency to testify. The victim was five years old at the time of trial. Kipp contends that the court erred in refusing to let him produce the testimony in question and answer form.

The offer of proof was made when the court was considering if the child victim was competent to testify. Defense counsel requested that he be allowed to produce a child psychiatrist to testify about the child's competency. The request was denied. The trial court ruled that the victim was competent. Defense counsel then requested that he be allowed to make a bill of exceptions in question and answer form giving the psychiatrist's proposed testimony. The court denied that request, but permitted defense counsel to make the offer in summary form.

Kipp contends that the court's ruling was error because TEX.R.CRIM.EVID. 103[1] and

---

1. TEX.R.CRIM.EVID. 103 provides:
    (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
    ....

TEX.R.APP.P. 52(b) [2] provide that a party may make an offer of proof in question and answer form. The rules do so provide, but they apply to offers of evidence excluded during the *trial.*

▇ TEX.R.CRIM.EVID. 601(a)(2) [3] empowers the trial judge to determine whether or not a child possesses sufficient intellect to relate the events about which he or she will testify. The determination of a witness' competency is within the sound discretion of the trial court. *Garcia v. State,* 573 S.W.2d 12 (Tex.Crim.App. [Panel Op.] 1978); *Fields v. State,* 500 S.W.2d 500 (Tex.Crim.App.1973); *Rhea v. State,* 705 S.W.2d 165 (Tex.App.–Texarkana 1985, pet. ref'd). Moreover, TEX.R.CRIM.EVID. 104(a) [4] provides that in considering preliminary matters such as the qualification of a person as a witness, the court is not bound by the rules of evidence, except those with respect to privileges. In making its determination of competency, then, the court was not bound to allow the offer of proof in question and answer form.

Kipp next contends that the court erred because it allowed expert testimony concerning the truth of the victim's testimony. Specifically, he complains of the following testimony by Dr. Michael Cox, a State rebuttal witness:

> (2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
> (b) Record of Offer and Ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may, or at request of a party shall, direct the making of an offer in question and answer form.

2. TEX.R.APP.P. 52(b) provides:
> When the court excludes evidence, the party offering same shall as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, an offer of proof in the form of a concise statement. The court may, or at the request of a party shall, direct the making of the offer in question and answer form.

3. TEX.R.CRIM.EVID. 601 provides:
**RULE 601. COMPETENCY AND INCOMPETENCY OF WITNESSES**

Q. How do you differentiate between a coached child and a child that's being truthful and giving you—telling you something that they actually remember happening to them?

[DEFENSE COUNSEL]: I'm going to go ahead and object to this line of questioning on the grounds that it is asking this witness to reflect on the credibility of witnesses in a case in general and in this case specifically, and that's invading the province of the jury. It's their job to make those decisions. Therefore, we would object to any expert testimony concerning credibility of a child witness or adult witness or any witness.

THE COURT: That's overruled.

Q. ... How do you make that determination as a psychologist or anyone?

A. Well, there are a number of ways that you look at that.

I think, first of all, the coached child is a non-spontaneous child. Their reports in terms of the detail and specificity can go only as far as the adult input who supposedly coached the child. In fact, there will be some loss in terms of recall and memory.

Q. Okay.

> (a) Every person is competent to be a witness except as otherwise provided in these rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:
> ....
> (2) *Children.* Children or other persons who after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated.

4. TEX.R.CRIM.EVID. 104 provides:
**RULE 104. PRELIMINARY QUESTIONS**
> (a) Questions of Admissibility Generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Let me give you a hypothetical. Suppose you heard a child give these details.

That an offense occurred when she was three-and-a-half-years old. It occurred at her daddy's apartment. It occurred in her room at that apartment. On her bed in that room. That she had on pants, that were pulled down to her ankles. That while she was on the bed he touched her on her genital area and then inserted his finger into her rectal area. That it hurt. That then there was a knock on the door, and it was her grandparents. That sequence of events, what would be your opinion as to whether a child could be coached into relaying those types of details?

[DEFENSE COUNSEL]: Your Honor, before he answers the question we would object once again. She's asking this witness to give an opinion as to the credibility of the child's story. And it is our contention that that is improper for a witness to testify about the credibility of any witness in the trial.

THE COURT: That's overruled.

Q. ... What is your professional opinion about that hypothetical?

A. That hypothetical strikes me as containing a lot of detail, a lot of sequencing. That would be difficult to coach up a child to give you that kind of scenario in my experience.

. . . .

Q. Okay.

When we were talking about coaching versus accurate information from children and talking about details—I'll show you what's marked as State's Exhibit Number Eight and if in a hypothetical case you had that picture drawn by a child and a corresponding description of abuse that is pictured by that—

[DEFENSE COUNSEL]: Excuse me, Your Honor, may we approach the bench. I want to see what picture we're talking about.

Okay. Fine.

Q. ... Is that the type of drawing that one would expect to see with a child that had been coached or that was not giving something from memory?

A. This is the type of graphic picture that you see in cases of abuse. Not coached.

Q. Not coached. Do you notice anything about the facial features of the figure that appears to be laying on the bed?

A. Yes.

Q. What do you notice about that?

A. Really several things.

First of all, it's a gloomy face. Mouth down turned in a frown. But the eyes probably are the most striking to me. The eyes appear to be turned back as if to look away as if to disassociate.

Q. And do you think that's a very important observation on that picture?

A. I think so.

Q. Do you think that something that a child that had not experienced that abuse could somehow draw in that way?

A. Very unlikely.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to this whole line of questioning as being on two grounds.

Number one, Dr. Cox has had no personal involvement with any of the individuals in this case.

Number two, he is testifying about the credibility of a witness. And it is our contention that is objectionable and improper. That the credibility of each witness in this case is the province of that jury.

We object, Your Honor.

THE COURT: That's overruled.

■■■ Where specialized knowledge will assist the jury in understanding the evidence or in determining a fact in issue, an expert may be allowed to provide that knowledge to the jury. TEX.R.CRIM.EVID. 702. Among the kinds of evidence admissible for that purpose is an expert's testimony which matches general or classic behav-

ioral characteristics of child sexual abuse victims with an alleged victim's specific behavior patterns, but does not directly comment on the credibility of the alleged victim. *Duckett v. State*, 797 S.W.2d 906 (Tex.Crim.App.1990). That the testimony indirectly bolsters the victim's testimony does not render it objectionable, so long as the victim's testimony has been impeached. *Duckett v. State, supra.* Here, the testimony of Dr. Cox merely refuted the defense's evidence that the child's detailed account of the event was "coached." Dr. Cox did not express a direct opinion as to the credibility of the child. His testimony was not introduced until after the child's testimony had been impeached and the defense had called experts of their own to testify that the allegations of sexual abuse were not true. There was no error in admitting the testimony.

Kipp next argues that certain State's witnesses' testimony constituted improper bolstering. He points to three instances of alleged bolstering: (1) Dr. Cox's testimony; (2) Rosalie Bonura's rebuttal testimony concerning facts given by Vicki Shaffer, the child's mother; and (3) Bonura's rebuttal testimony concerning the child victim's testimony.

■ Kipp first contends that Dr. Cox's testimony improperly bolstered the testimony given by the victim. We have already ruled that Dr. Cox's testimony was not improper bolstering. Testimony matching general behavior patterns of child sexual abuse victims with the victim's specific actions was admissible. The child's testimony had been impeached by counsel, who questioned her in such a manner as implied that she was coached into drawing a picture that depicted the assault, that she was rewarded by her mother for doing so, and that she had lied about the assault. Because there was cross-examination which tended to undermine her testimony, Dr. Cox's testimony was admissible to rehabilitate her. *Duckett v. State, supra; Pless v. State*, 576 S.W.2d 83 (Tex.Crim.App. [Panel Op.] 1978); *Sapien v. State*, 705 S.W.2d 214 (Tex.App.—Texarkana 1985, pet. ref'd).

Kipp also contends that the testimony of Rosalie Bonura improperly bolstered Vicki Shaffer's testimony. Shaffer, the victim's mother, testified about an incident where her daughter, in the presence of Bonura, kissed the genital area of a doll. On rebuttal, the State called Bonura, who gave testimony concerning the same incident. Bonura testified as follows:

> Q. Now, in May of 1986, did you have an occasion to have Vicki and Janelle visit your home?
>
> A. Yes, I did.
>
> Q. Is this during the time when you were visiting with them on a regular basis?
>
> A. Yes, I was.
>
> . . . .
>
> Q. ... Did you notice any action on Janelle's part that you thought was a bit odd, with the doll.
>
> A. With the doll? Well, she took the doll's clothes off and started, like, kissing the doll and humping on top of the doll.
>
> Q. Did she make any sounds while she was doing that?
>
> A. Yeah; she was, like, grunting.
>
> Q. Now, when she was humping on the doll—can you specifically describe the type of activity with the doll?
>
> . . . .
>
> A. She started kissing the mouth first. And then she started—she went to each hand and kissed the hand; went down the stomach, kissed the stomach. She touched the—opened the legs up and she kissed inside the legs constantly. Then she put the doll down and she started humping on top of it.

Kipp argues that since Vicki Shaffer's account of the doll incident was unimpeached, Bonura's testimony impermissibly bolstered Shaffer's credibility. We disagree.

■ The testimony was not bolstering. Bolstering occurs where evidence is *improperly* used to add credence or weight to some earlier unimpeached evidence offered by the same party. *Sledge v. State*, 686 S.W.2d 127 (Tex.Crim.App.1984); *Pless v.*

*State, supra.* Not all corroborative evidence is improper bolstering. For example, a party may prove any relevant fact by the direct testimony of more than one witness. Indeed, a fact may be proven by multiple witnesses who have personal knowledge of the fact, subject to the court's discretion to exclude cumulative evidence, and so long as the testimony does not specifically relate to another witness' credibility. *See Baskin v. State,* 672 S.W.2d 312 (Tex.App.–San Antonio 1984, no pet.). In this case, Bonura was testifying to a relevant fact about which she has personal knowledge, and she did not specifically relate her testimony to the credibility of any other witness. That Vicki Shaffer testified to the same fact does not make Bonura's testimony improper bolstering.

■ Kipp also contends that Bonura's testimony improperly bolstered the victim's testimony. Bonura testified that in connection with the doll kissing incident, the child stated that "daddy did that to her." Kipp argues that this statement concerning a May 1986 incident (not the charged offense) improperly bolstered the State's case. We disagree.

The defense had previously presented the testimony of several experts, notably Dr. Hayes, who had testified that the victim did not exhibit any symptoms of sexual abuse, either in 1986 or after the date of the charged offense in 1987. Dr. Hayes specifically testified that the child told him no improper or abusive sexual conduct had ever occurred between her and her father. Having thus opened the door to evidence of complaints and symptoms of sexual abuse, Kipp cannot complain of the rebuttal testimony that the child had complained of improper sexual conduct.

■ Kipp next complains that the trial court erred in admitting Bonura's testimony concerning the child complainant's statement that "daddy did that to her" because such statement constituted hearsay and failed to conform to the sexual victim outcry statute, TEX.CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp.1991).

The trial court admitted the child's statement as a prior consistent statement under TEX.R.CRIM.EVID. 801(e)(1). Kipp argues that the statement does not meet the requirements of Rule 801(e)(1). We agree. That rule provides that:

A statement is not hearsay if:

The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) *consistent* with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive,....

(Emphasis added.) Although the child was subject to cross-examination concerning the statement allegedly made during the May 1986 doll incident, such statement is not consistent with her testimony at trial. The child's testimony at trial dealt only with the charged offense, i.e., Kipp's inserting his finger into the child's anus and touching her genitals. The complained-of statement dealt with the kissing of the genital area, an offense that allegedly occurred one year prior to the charged offense. Consequently, the statement was not admissible as a prior consistent statement under Rule 801(e)(1). The statement was admissible, however, for two other reasons. First, as noted earlier, the defense had opened the door to this type of evidence when it produced testimony by Dr. Hayes that the child, in her conversations with him and in his examinations of her, had denied that any sexual conduct had occurred in 1986 or 1987 with her father and that she showed no symptoms of sexual abuse. Second, the evidence was not hearsay because it was offered, not for the truth of the matter asserted, but only to show that the statement was made. TEX.R.CRIM.EVID. 801(d). The defense could have had a limiting instruction given to the jury, but it did not request one.

■ In Kipp's final point of error, he contends that the trial court erred in allowing evidence of several extraneous offenses. He points to three matters: (1) testimony from Rosalie Bonura about the doll kissing incident; (2) Bonura's testimony about Kipp's alleged vandalism or criminal mischief; and (3) evidence of Kipp's

alleged sexual offense concerning his stepson. An examination of the record reveals that evidence of the latter two events was not admitted by the trial court. On the contrary, as to the vandalism, the court sustained defense counsel's objection and instructed the jury to disregard. As to the alleged sexual offense concerning Kipp's stepson, the prosecution never produced any testimony about the event. In fact, the prosecutor instructed the witness not to go into what happened. We have already ruled that the victim's statement about the doll kissing was admissible because the defense opened the door to evidence of the child's complaints and because the statement was not hearsay. There is no error.

For the reasons stated, the judgment of the trial court is affirmed.