John Everett KIPP, Appellant,

v.

The STATE of Texas, Appellee.

No. 244–91.

Court of Criminal Appeals of Texas.

March 23, 1994.

Audley H. Heath, Max E. Roesch, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Marie Munier, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted in a trial by jury of the offense of indecency with a child. The jury assessed punishment at five years confinement, probated. The Court of Appeals affirmed. *Kipp v. State*, 802 S.W.2d 804 (Tex.App.—Texarkana 1990).[1] We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in holding that (1) the trial court properly refused to permit appellant to perfect an offer of proof, (2) the State's expert witness did not improperly testify about the truth or falsity of the complainant's testimony, (3) certain hearsay evidence was properly admitted at trial, and (4) the admission of certain extraneous offense evidence was proper.

### I. Bill of Exception

At the time of trial the complainant was six years old; the offense occurred when she was three and one half years old. Prior to the complainant's testimony the trial court questioned her outside the presence of the jury in an effort to determine her competency. Following the court's questioning appellant objected that the complainant was incompetent to testify and asked to call Dr. Elizabeth Bratteng to testify about "the cognitive capabilities of separating reality from

1. This case was originally assigned to the First Court of Appeals, but was later transferred to the Sixth Court of Appeals.

fantasy" of a small child, as an aid to the court in making its ruling on the complainant's competency. The court denied appellant's request to call Dr. Bratteng and appellant sought to make a bill of exception in question and answer form. The court denied perfection of the bill in question and answer form, but stated that a bill in summary form would be acceptable. Appellant declined to make a bill in summary form.

■ On appeal, appellant pointed to Rule of Criminal Evidence 103(b) and Rule of Appellate Procedure 52(b) in support of his claim that he was entitled to perfect a bill in question and answer form. The Court of Appeals acknowledged those rules as providing that the trial court shall at the request of a party direct the making of an offer of proof in question and answer form, but emphasized that both Rules 103(b) and 52(b) apply to "offers of evidence excluded during *trial*", implying that the evidence offered here was not excluded during trial. *Kipp,* 802 S.W.2d at 807 (emphasis in original). The Court of Appeals also held that the trial court did not abuse its discretion, the competency of a witness being within the sound discretion of the trial court under Rule of Criminal Evidence 601(a)(2) and further because Rule of Criminal Evidence 104(a) provides that on preliminary issues such as the qualification of a witness, the trial court is not bound by the Rules of Evidence. *Id.*

Rule of Criminal Evidence 103(b) and Rule of Appellate Procedure 52(b) each provides that the trial court "at the request of a party shall, direct the making of an (the) offer in question and answer form."[2] In addition, we

have held that "[t]he right to make an offer of proof or perfect a bill of exception is absolute." *Spence v. State,* 758 S.W.2d 597, 599 (Tex.Crim.App.1988), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991).

We reject the Court of Appeals' conclusion that Rules 103(b) and 52(b) are inapplicable because they only apply to "offers of evidence excluded during *trial*". Because the "trial" was clearly in process at the time of the competency hearing,[3] we can only assume the Court of Appeals meant the evidence was not offered "during trial" because it was offered during a hearing outside the presence of the jury. We have never made such a distinction. *See id.* (trial court erred under predecessor to Rule 52, in precluding appellant from making offer of proof as to testimony excluded during pre-trial hearing on appellant's motion to dismiss indictment). Neither does the plain language of either Rule 52(b) or Rule 103(b) make such distinction.

■ We also reject the Court of Appeals' holding that appellant was properly precluded from perfecting his bill on the grounds that the trial court is empowered under Rule of Criminal Evidence 601 to determine, within his sound discretion, the competency of child witnesses. The discretion of the trial court to make such a determination does not render it immune from arriving at its determination in accordance with the rules of evidence and procedure. The right to make a bill of exception is absolute; a trial court does not have discretion to deny a request to perfect a bill of exception. *See*

> When the court excludes evidence, the party offering same shall as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, an offer of proof in the form of a concise statement. *The court may, or at the request of a party shall, direct the making of the offer in question and answer form.*
> Tex.R.App.P. 52(b) (emphasis added).

---

**2.** Rule of Criminal Evidence 103 pertains to rulings on evidence. Subsection (a) provides, in part, that error may not be predicated on a ruling excluding evidence unless a substantial right of the party is affected and the party proffering the evidence has made the substance of the evidence known to the court. Subsection (b) provides that

> The court may add any other or further statement which shows the character of the evidence, the form in which is was offered, the objection made, and the ruling thereon. *It may, or at request of a party shall, direct the making of an offer in question and answer form.*
> Tex R.Crim.Evid. 103 (emphasis added). Similarly, Rule of Appellate Procedure 52(b) provides, in relevant part, that

**3.** As pointed out by appellant in his brief, at this stage of the proceedings the jury had been empaneled, the State had given its opening argument and had called and examined several witnesses in its case in chief.

*Spence, supra.* Rules 104(b) and 52(b) are unequivocal in providing that the trial court shall allow the perfection of a bill in question and answer form at the request of a party.

■ Finally, the Court of Appeals' conclusion that pursuant to Rule of Criminal Evidence 104(a) the trial court "is not bound by the rules of evidence"[4] and therefore "was not bound to allow the offer of proof in question and answer form" did not take into account the fact that Rule of Appellate Procedure 52(b) is unaffected by Rule 104(b). Irrespective of any conflict between Rule of Criminal Evidence 104(a) and Rule of Criminal Evidence 103(b), the trial court was still bound by Rule of Appellate Procedure 52(b) which provides that the court "at the request of a party shall, direct the making of the offer in question and answer form." The Court of Appeals erred in concluding that the trial court did not abuse its discretion in refusing appellant's request to perfect a bill in question and answer form, as required by Rule 52(a).

## II. Expert Testimony

■ In its case in chief, the State called a psychotherapist[5] who testified that she had evaluated the complainant and concluded that the complainant had been sexually abused.[6] The psychotherapist also testified that in her opinion the complainant's allega-

tions had not been suggested to her by a third person.[7]

In presenting his defense, appellant called four experts who testified on the issue of child sexual abuse.[8] A psychiatrist testified that she had evaluated the family and concluded there was no indication that abuse had occurred. She further testified that the complainant's mother suffered from borderline personality disorder, had a distorted view of reality and projected those views and her feelings onto the complainant who was suggestible. A clinical psychologist testified that the complainant's mother had a borderline personality disorder, that she had trouble with reality and that she might project her feelings onto her child. She further testified that preoperational children will believe something is reality if repeated enough times, that in her opinion there was no evidence of abuse in this case and that the complainant's allegations were the product of the complainant's mother's distortion of the facts in order to retain custody of the complainant. An associate professor of psychiatry testified that in his opinion the complainant's mother was projecting her own sexual problems with appellant onto the complainant's relationship with appellant and that the complainant did not exhibit any of the characteristics of an abused child. He also testified on redirect that it was possible for a

---

4. Rule of Criminal Evidence 104(a) provides as follows:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). *In making its determination it is not bound by the rules of evidence except those with respect to privileges.*

(emphasis added).

5. The State also called a medical doctor who had examined the complainant and testified to physical evidence indicating abuse.

6. Appellant objected to the expert's testimony as to her conclusions about the existence of abuse on the ground that it was "a conclusion on an ultimate fact issue ... for the jury to decide." Appellant's objection was overruled.

7. The questioning in this regard was as follows: [Prosecutor] Q. What's contamination when you're talking about evaluation of sexual abuse? What does that mean?

[Expert Witness] A. I think—I'm not sure how it was used or—but my understanding of that would be somebody was trying to tell the child what to say, that they had fed the child the story.

Q. Did you get any feelings or impression from [the complainant] in her case at all that she had been quote, unquote—"contaminated"?

Appellant: Your Honor, we would object to her answering this question. It's asking her to speculate on the feelings and emotions and thoughts of the child.

The Court: That's overruled. You may answer that.

A. I did not see that.

Q. Did you look for it?

A. Definitely.

8. Appellant also offered medical experts who refuted the State's medical testimony regarding the physical evidence of abuse.

mother to lead a child to believe the father had abused the child, even though not true. Finally, a psychiatrist testified that the complainant was suggestible and that the complainant, torn between her mother and father, chose to please her mother. She also testified that she had doubts as to the authenticity of the complainant's allegations and discussed the factors that lead her to question the allegations.

In rebuttal, the State called Dr. Michael Cox, an associate professor of psychiatry. Appellant complains of Cox's testimony relating to the issue of whether or not the complainant had been "coached".[9] Appellant's objections to this testimony on the grounds that Cox was testifying as to the credibility of the complainant witness, thereby invading the province of the jury, were overruled.

The Court of Appeals held that Cox's testimony was admissible under Rule of Criminal Evidence 702 and this Court's opinion in *Duckett v. State*, 797 S.W.2d 906 (Tex.Crim. App.1990). The Court of Appeals further stated that the testimony "merely refuted the defense's evidence that the child's detailed account of the event was 'coached.'" *Kipp*, 802 S.W.2d at 809. Appellant disagrees with the Court of Appeals on the ground that Dr. Cox's testimony amounted to a "direct opinion" on the credibility of the complainant's testimony, which was condemned by this Court in *Duckett.*

We will not reach the merits of appellant's contentions under *Duckett* because the Court of Appeals correctly concluded that Cox's testimony "merely refuted the defense's evidence". In other words, appellant opened the door to expert testimony pertaining to the authenticity of the complainant's allegations. Admittedly, the first expert to comment directly on the genuineness of the complainant's allegations was the psychotherapist called by the State in its case in chief. She testified that in her opinion, the com-

9. Appellant complains of the following testimony:

[Prosecutor] Q. How do you differentiate between a coached child and a child that's being truthful and giving you—telling you something that they actually remember happening to them?

[objection by appellant overruled]

Q. How do you make that determination as a psychologist or anyone?

[Dr. Cox] A. Well, there are a number of ways that you look at that.

I think, first of all, the coached child is a non-spontaneous child. Their reports in terms of the detail and specificity can go only as far as the adult input who supposedly coached the child. In fact, there will be some loss in terms of recall and memory.

Q. Okay.

Let me give you a hypothetical. Suppose you heard a child give these details.

That an offense occurred when she was three-and-a-half years old. It occurred at her daddy's apartment. It occurred in her room at that apartment. On her bed in that room. That she had on pants, that were pulled down to her ankles. That while she was on the bed he touched her on her genital area and then inserted his finger into her rectal area. That it hurt. That then there was a knock on the door, and it was her grandparents. That sequence of events, what would be your opinion as to whether a child could be coached into relaying those types of details?

[objection by appellant overruled]

Q. What is your professional opinion about that hypothetical?

A. That hypothetical strikes me as containing a lot of detail, a lot of sequencing. That would be difficult to coach up a child to give that kind of scenario in my experience.

\* \* \* \* \* \*

Q. Okay.

When we were talking about coaching versus accurate information from children and talking about details—I'll show you what's marked as State's Exhibit Number Eight and if in a hypothetical case you had that picture drawn by a child and a corresponding description of abuse that is pictured by that ... Is that the type of drawing that one would expect to see with a child that had been coached or that was not giving something from memory?

A. This is the type of graphic picture that you see in cases of abuse. Not coached.

Q. Not coached.

Do you notice anything about the facial features of the figure that appears to be laying on the bed?

A. Yes.

Q. What do you notice about that?

A. Really several things.

First of all, it's a gloomy face. Mouth down turned in a frown. But the eyes probably are the most striking to me. The eyes appear turned back as if to look away as if to disassociate.

Q. And do you think that's a very important observation on that picture?

A. I think so.

Q. Do you think that something that a child that had not experienced that abuse could somehow draw in that way?

A. Very unlikely.

plainant's story was not the product of a third person's suggestions. However, appellant did not object to this testimony on the ground that it was an improper direct opinion on the credibility of the complainant. *Fn. 7, supra* (objection on ground that such testimony was speculation "on the feelings and emotions and thoughts of" the complainant). Thereafter, in his defense, appellant called numerous experts who testified to the issue of whether the complainant had been "coached".[10] Having failed to properly object to the State's first expert to give an opinion on the issue of whether the complainant had been coached, and having called several of his own expert witnesses to testify to the same, appellant cannot now complain of Cox's testimony which merely refuted the evidence offered by the defense. For these reasons, the Court of Appeals opinion with respect to this issue is affirmed.

### III. Hearsay

During the trial on the merits, the State called Rosalie Bonura as a rebuttal witness following the defense testimony of appellant. Bonura, a former neighbor of appellant and his wife, Vicki, testified to an incident that allegedly occurred at her house in May of 1986:

> [Prosecutor] Q. Does [the complainant] pick up this doll on May the 19th of 1986?
>
> [Bonura] A. Yes, she did.
>
> Q. What did you see her do with that doll?
>
> A. She immediately took the clothes off of the doll, and I asked her not to do that. And she said, "My daddy"—

At that point appellant objected to the State's attempt to elicit hearsay testimony. Although appellant's objection was initially sustained, the trial court ultimately overruled it and expressly admitted the statement as a prior consistent statement under Rule of Criminal Evidence 801(e)(1). Thereafter, the following testimony was elicited before the jury:

> [Prosecutor] Q. Now, in May of 1986, did you have occasion to have Vicki and [the complainant] visit your home?
>
> [Bonura] A. Yes, I did.
>
> \* \* \* \* \* \*
>
> Q. Did you notice any action on [the complainant's] part that you thought was a bit odd, with the doll?
>
> A. With the doll? Well, she took the doll's clothes off and started, like, kissing the doll and humping on top of the doll.
>
> Q. Did she make any sounds while she was doing that?
>
> A. Yeah; she was, like, grunting.
>
> Q. Now, when she was humping on the doll—can you specifically describe the type of activity with the doll?
>
> \* \* \* \* \* \*
>
> A. She started kissing the mouth first. And then she started—she went to each hand and kissed the hand; went down the stomach, kissed the stomach. She touched the—opened the legs up and she kissed inside the legs constantly. Then she put the doll down and she started humping on top of it.
>
> Q. What part of her body was touching the doll?
>
> A. Her female part.
>
> Q. What part of the doll was she touching—the whole doll or part of it?
>
> A. The bottom part—half of the doll.
>
> Q. The genital area of the doll?
>
> A. Yes, uh-huh.
>
> \* \* \* \* \* \*
>
> Q. After [the complainant] did what you have described her doing, did she say anything?
>
> A. Yes, she did.
>
> Q. And what did she say?
>
> A. *She said her daddy did that to her.*

(emphasis added).

The Court of Appeals agreed with appellant that the statement was not admissible under Rule 801(e)(1) as a prior consistent

---

**10.** Although Dr. Cox was the first expert to speak in terms of "coaching", the previous experts who spoke in terms of "contamination", *Fn. 7, supra,* or "suggestibility" were addressing the same issue—that is, whether the complainant's story was the product of a third person's suggestions.

statement, but held the statement was admissible for two other reasons:

> First, as noted earlier, the defense had opened the door to this type of evidence when it produced testimony by Dr. Hayes that the child, in her conversations with him and in his examinations of her, had denied that any sexual conduct had occurred in 1986 or 1987 with her father and that she showed no symptoms of sexual abuse. Second, the evidence was not hearsay because it was offered, not for the truth of the matter asserted, but only to show that the statement was made. Tex. R.Crim.Evid. 801(d). The defense could have had a limiting instruction given to the jury, but it did not request one.

*Kipp*, 802 S.W.2d at 810.

Appellant claims the defense did not open the door to the challenged statement, but that the State first elicited testimony regarding the 1986 incident during its cross-examination of Dr. Hayes. Appellant also claims the statement did not meet the requirements of the outcry statute, and was not otherwise admissible under any exception to the hearsay rule. The State agrees with the Court of Appeals that the defense opened the door to the statement, and alternatively argues that the statement was admissible under any number of exceptions to the hearsay rule.

### A. Invited testimony

Dr. Hayes, a witness for appellant, testified on direct examination that he had met with and evaluated the complainant in 1986 and again in 1987. He further testified on direct examination that the complainant had not exhibited behavior consistent with sexual abuse in either meeting. On cross-examination Hayes indicated that the complainant had communicated to him that no abuse had occurred. The form of that communication was not made clear during that cross-examination. On re-direct examination, he clarified that the complainant had, in both meetings, verbally denied the occurrence of any abuse.

■ We cannot agree that the hearsay statement was "invited" by appellant. Although arguably appellant's redirect examination of Hayes, in which Hayes stated that the complainant had verbally denied abuse in both his 1986 interview and again in 1987, opened the door to testimony that the complainant had elsewhere complained of abuse in 1986 and in 1987, it did not open the door to *hearsay* testimony on that issue. "Opening the door" or "inviting" testimony that would otherwise pertain to an inadmissible subject matter does not mean that such testimony is necessarily "invited" into evidence in *any* form, including hearsay.[11] Our inquiry does not end here, however, because if evidence is admissible on any grounds, we will affirm its admission. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

### B. Prior consistent statement

■ The trial court expressly admitted the statement under Rule of Criminal Evidence 801(e)(1)(B).[12] The Court of Appeals held that the statement was not admissible under this Rule because it was not consistent with the complainant's trial testimony. 802

---

**11.** We acknowledge that under certain circumstances hearsay testimony could be viewed as being invited. For instance, if part of a hearsay statement is testified to, the remainder of the statement may be admissible under the Rule of Optional Completeness. *See LeBlanc v. State*, 737 S.W.2d 865, 869 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd) (where defendant questioned detective extensively about a hearsay statement made to him during the course of his investigation, the hearsay statement was properly admitted by the State on redirect examination under Rule of Optional Completeness). Another instance in which hearsay has been viewed as having been invited is where the hearsay statement is necessary in order to establish the existence of probable cause. *Ledesma v. State*, 650

S.W.2d 164, 167 (Tex.App.—San Antonio 1983, no pet.) (where defense was inquiring into probable cause of sheriff to arrest the defendant, statement made to sheriff before defendant's arrest was admissible as going to the issue of probable cause).

**12.** Rule 801(e)(1)(B) provides, in relevant part, that:

> A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, ....

S.W.2d at 810. The Court of Appeals reasoned that the trial testimony pertained only to the charged offense, which alleged that appellant inserted his finger into the complainant's anus and touched her genitals; by contrast, the statement in question pertained to the kissing of the genital area approximately one year prior to the charged offense. We agree with the Court of Appeals that a prior consistent statement for purposes of Rule 801(e)(1)(B) must relate to the same matter or incident testified to by the declarant at trial. Appellant was charged with sexually assaulting the complainant on or about February 22, 1987. The complainant's testimony pertained to the charged incident, not about a 1986 incident. Thus, a statement implicating appellant in an incident occurring in 1986 is not admissible as a "prior consistent statement" because it pertains to an entirely different incident than addressed in complainant's testimony.

### C. Truth of matter asserted

The Court of Appeals also held that the statement was not hearsay because it was not offered for the truth of the matter asserted, but was offered simply to show that the statement had been made. Appellant asserts that the statement was never offered for any purpose other than the truth of the matter asserted. Review of the record shows that the State offered the statement first as an excited utterance and then as a prior consistent statement. In its brief before this Court the State continues to assert that the statement was admissible as an excited utterance. An excited utterance is admissible as an exception to the hearsay rule and is therefore, by definition, offered for the truth of the matter asserted. *See* Tex.R.Crim.Evid. 801(d) (defining hearsay in part as statement offered to prove truth of matter asserted); *see also id.* at 803(2) (excited utterance is exception to hearsay rule). We cannot agree that the statement here was not offered for the truth of the matter asserted.

### D. Any other basis

■ The State asserts in its brief that the statement is admissible "whether it is considered outcry, present sense impression, excited utterance, state of mind, prior consistent statement, invited by the defensive evidence introduced or just some good old fashioned 'res gestae' exception...." We have already concluded the statement did not constitute a prior consistent statement and was not invited by defensive evidence. We also hold that the statement was not admissible under any of the other Rules of Evidence or theories urged by the State.[13] Accordingly,

---

13. Nothing in the record indicates that the statutory requirements of the outcry provision were met. *See Dorado v. State,* 843 S.W.2d 37, 38 (Tex.Crim.App.1992) (outcry provision provides exception to hearsay rule only when its requisite conditions are met); *Holland v. State,* 802 S.W.2d 696, 697 fn.1 (Tex.Crim.App.1991) (proponent of outcry statement must give at least two weeks notice and provide written summary under article 38.072); *see also* Tex.Code Crim.Proc. Ann. art. 38.072, § 2(b) (even hearsay statement is admissible under this provision if party offering statement notifies other party 14 days before proceeding). The statement, made during a *reenactment* of an earlier event, cannot be considered a "present sense impression" of that earlier event. *See Rabbani v. State,* 847 S.W.2d 555, 560 (Tex.Crim.App.1992) ("rationale for [present sense impression] exception stems from statement's contemporaneity, not its spontaneity"), *cert. denied,* —— U.S. ——, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993); Tex.R.Crim.Evid. 803(1) (statement made "while declarant was perceiving the event or condition, or immediately thereafter"). The statement was not one of the complainant's "state of mind", but rather was ex-

planatory of the surrounding circumstances. *See* Tex.R.Crim.Evid. 803(3).

Neither can we conclude that the statement was an "excited utterance" under Rule of Criminal Evidence 803(2). The critical factor in determining when a statement is an excited utterance under Rule 803(2), "is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Mrs. Bonura's testimony does not reflect the emotional state of the complainant or otherwise indicate whether the complainant was at the time of the statement "still dominated by the emotions, excitement, fear, or pain of the event." *See* Hulen D. Wendorf, David A. Schlueter & Robert R. Barton, Texas Rules of Evidence Manual VIII–54 (3rd ed. 1991) (proponent of evidence must establish that statement was made while declarant still affected by startling event). While one who is subjected to a sexual assault will undoubtedly experience a great deal of stress and emotional pain as a result thereof, we cannot say that one's statements thereafter in connection with such experience amount to "excited utterances" under Rule 803(2). In addition, the

we conclude the Court of Appeals erred in holding that the hearsay statement was admissible.

## IV. Extraneous offenses

Finally, appellant complains of the admission of evidence implicating him in three extraneous offenses: (1) vandalism or criminal mischief, (2) sexual assault of his stepson, and (3) the doll-kissing incident discussed in Part III of this opinion. The Court of Appeals held that appellant's claims with respect to the first two offenses were without merit because appellant's objections to the evidence of vandalism were sustained and an instruction to disregard given and because no evidence of sexual misconduct with his stepson was admitted. The Court of Appeals did not address the issue with respect to the doll-kissing incident on the ground that it had already held such evidence was admissible because the defendant had opened the door and because it was not hearsay. We need not address the admissibility of the doll-kissing incident as an extraneous offense, as we have already held that it was inadmissible hearsay.

The following exchange pertaining to the alleged vandalism or criminal mischief occurred during Mrs. Bonura's testimony about the doll-kissing incident:

[Prosecutor] Q. Have you had occasion to give testimony in a previous hearing, in a civil case, concerning what you've talked about here?

[Bonura] A. Yes, I have.

Q. Did anything unusual happen after that?

A. Yes.

Q. What was that?

[Defense counsel]: Objection, Your Honor, unless there's some relevance to it.

THE COURT: It's hard to know whether there will be or not. Thus far, your objection is sustained.

[Defense counsel]: Thank you, Your Honor.

Q. Has your home ever been vandalized?

A. Yes, it was.

Appellant again objected on relevance grounds. His objection was sustained and the trial court instructed the jury to disregard the witness' comment. Appellant's subsequent motion for a mistrial was denied.

We have held that a witness' inadvertent reference to an extraneous offense is generally cured by a prompt instruction to disregard. *Nobles v. State,* 843 S.W.2d 503, 514 (Tex.Crim.App.1992). Although the reference to the extraneous offense here was not inadvertent but was specifically elicited by the State, it was nevertheless a rather vague reference, did not directly implicate appellant, and did not include any facts giving credence thereto. This reference was not so "clearly calculated to inflame the minds of the jury or [was] of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). We agree with the Court of Appeals that the trial court did not abuse its discretion in overruling appellant's motion for a mistrial, since the instruction to disregard sufficiently cured any error.

During the State's direct examination of appellant's stepson, the State began to question him about "odd" conversations between him and appellant. Upon appellant's objection, the parties had a discussion outside the presence of the jury where it was revealed that the State intended to elicit testimony about conversations in which appellant and his stepson discussed puberty and masturbation. The State also wanted to discuss an incident in which appellant allegedly assisted his stepson in masturbating with vaseline. The trial court stated that any discussion pertaining to the vaseline incident would be inadmissible extraneous offense evidence. The State agreed to "stay out of the vase-

record does not reflect the amount of time that passed between the alleged event and the statement, nor is it reflected whether the statement was made in response to a question or was

spontaneously stated, both of which might bear upon whether the statement amounted to an excited utterance. *Id.* at VIII–54, VIII–55.

line." Subsequently, the following exchange occurred before the jury:

> [Prosecutor]  Q.  Did you ever see [appellant] get out a jar of vaseline?
>
> [Witness]  A.  Once.
>
> Q.  Not going into what happened—

Appellant thereupon objected and his objection was sustained.  We agree with the Court of Appeals that no evidence of the extraneous offense was admitted.  The State's reference to appellant's getting out a jar of vaseline was not sufficiently specific to implicate appellant in an extraneous offense.  Any further discussion which would have implicated appellant was averted by appellant's objection.

∎ Appellant also complained in the Court of Appeals (and again in this petition) that the line of questioning preceding those pertaining to the vaseline was also evidence of extraneous acts.[14]  However, the Court of Appeals did not address the admissibility of those questions.  Accordingly, we hold that the Court of Appeals erred in failing to consider the admissibility of the testimony pertaining to the conversations between appellant and his stepson.

Having held the Court of Appeals erred in failing to address the admissibility of allegedly extraneous acts, we reverse the judgment of the Court of Appeals and remand this cause to that court for disposition of the ground of error not fully dealt with on original submission.  Having also held the Court of Appeals erred in its ruling on the grounds for review discussed in Parts I and III of this opinion, we reverse the judgment of the Court of Appeals and remand this cause to that court to conduct a harm analysis.  TEX. R.APP.P.  81(b)(2).[15]

**14.**  These questions pertained to conversations between appellant and his stepson in which they discussed puberty and masturbation.

**15.**  If the Court of Appeals finds that the error discussed in Part III of this opinion (hearsay) was harmful, it need not address the error discussed in Part I (bill of exception).  However, if it finds that the error discussed in Part III of this opinion was harmless, in order to assess the harm arising from the error discussed in Part I,

McCORMICK, P.J., and MEYERS, J., concur in the result.

CLINTON and CAMPBELL, JJ., dissent as to Part II of the opinion, but otherwise concur in the result.

MILLER, J., dissents as to Part I of the opinion, but otherwise concurs in the result.

WHITE, J., dissents.

it may remand this cause to the trial court for a hearing so that appellant can perfect the record. *Spence,* 758 S.W.2d at 599–600.  The trial court shall be instructed to conduct a hearing at the earliest opportunity and allow appellant to enter into the record the testimony excluded by the trial court.  *Id.*  Following the hearing, the trial court shall forward the record to the Court of Appeals to conduct a harm analysis with respect to the error discussed in Part I hereof.