**Affirmed and Memorandum Opinion filed January 8, 2013.**



In the

# Fourteenth Court of Appeals

NO. 14-11-01068-CR
NO. 14-11-01069-CR

**MARCUS ANTHONY WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1216017 & 1216018**

# M E M O R A N D U M   O P I N I O N

Appellant Marcus Anthony Williams was convicted of the felony offenses of indecency with a child and sexual assault of a child. Appellant seeks reversal of his convictions, complaining that the trial court erred by allowing testimony as to the contents of a journal allegedly written by the complainant because the evidence was hearsay and was not admissible as a prior inconsistent statement used to rebut

a charge of recent fabrication under rule 801(e)(1)(B) of the Texas Rules of Evidence.  We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with the felony offenses of indecency with a child and sexual assault of a child, alleged to have been committed on or about July 1, 2004, and February 4, 2006, respectively.

At trial, the complainant K.G. testified that she was raised by her grandparents and had a close relationship with her aunts, uncles, and cousins. Appellant was K.G.'s uncle by marriage to her aunt, Kayla.[1]  K.G. testified that one weekend evening during the summer of 2004, when she was fourteen years old, she was wrestling and playing with her cousins at her aunt Kayla's and appellant's house.  At one point, she climbed into her cousin's top bunk bed, and appellant leaned over her and started touching and squeezing her breasts over her clothes.  Very early the next morning, according to K.G., appellant walked into her cousin's bedroom, picked K.G. up from the floor where she was sleeping, and took her to the living room, where appellant squeezed her breasts underneath her nightgown.   K.G. testified that these incidents with appellant, where he would touch and squeeze her breasts, occurred almost every weekend when she would visit his home and continued for approximately four years.

Starting when K.G. was either fourteen or fifteen, appellant also would place and move his penis in between her breasts until he ejaculated.  K.G. testified that, after she turned sixteen, appellant also attempted to get her to perform oral sex on two occasions.  She testified that appellant pushed her head down and put his penis in her mouth but then gave up when she resisted.  Appellant made no further

---

[1] Appellant and K.G.'s aunt were divorced in 2009.

attempt to get K.G. to perform oral sex, but he continued to touch her breasts and place his penis between her breasts.

Eventually, K.G. became tired of appellant's behavior and ran away from her grandparents' home in December 2008. K.G. left a note that someone in the family had been "messing" with her for the last four years and that he had touched her inappropriately but had never "raped" her. She then went to live with another aunt, Sherri, and told that aunt about the abuse. K.G. and her aunt Sherri reported the offenses to police.

Also at trial, Kathy, a friend of K.G., testified that while in high school, she, K.G., and another friend wrote to one another through a shared journal. According to Kathy, sometime in the fall of 2006, K.G. wrote something that concerned Kathy. Over defense counsel's objection, Kathy testified that K.G. wrote entries about a "friend" whose uncle "had been messing with her" and had been trying to get her to perform oral sex on him. Later, in the spring of 2007, K.G. wrote in the journal that the "friend" was actually herself. The trial court overruled defense counsel's objection because the journal statements did not constitute hearsay and were admissible under Texas Rule of Evidence 801(e)(1)(B).

The jury found appellant guilty of both offenses. The jury sentenced him to ten years' confinement, probated for ten years, for the offense of indecency with a child and to three years' confinement for the offense of sexual assault of a child.

On appeal of both convictions, appellant raises the sole issue of whether the trial court committed harmful error when it allowed Kathy to testify about the journal entries allegedly written by K.G.

## II. STANDARD OF REVIEW

We review "a trial court's determination that a prior consistent statement is

3

admissible because the cross-examination suggested or implied a recent fabrication or improper motive . . . only for an abuse of discretion." *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007). An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)). We view the evidence in the light most favorable to the trial court's ruling. *Klein v. State*, 273 S.W.3d 297, 304–05 (Tex. Crim. App. 2008). We "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

### III. ANALYSIS

Appellant argues that the trial court erred in admitting K.G.'s alleged journal statements because they constituted hearsay and did not meet the requirements to be admitted as prior consistent statements under rule 801(e)(1)(B). We conclude that the trial court did not abuse its discretion in admitting Kathy's testimony about the journal entries.

Rule 801(e)(1)(B) permits the substantive, non-hearsay admission of prior consistent statements of a witness "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Hammons*, 239 S.W.3d at 804 (quoting TEX. R. EVID. 801(e)(1)(B)). Four requirements must be met for prior consistent statements to be admissible: (1) the declarant must testify at trial and be subject to cross-examination, (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent, (3) the proponent must offer a prior statement consistent with the declarant's challenged in-court testimony, and (4) the

4

prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Id.* (citing *Tome v. United States*, 513 U.S. 150, 156–58 (1995)).

The Court of Criminal Appeals has emphasized that rule 801(e)(1)(B) "sets forth a minimal foundation requirement of an implied or express charge of fabrication or improper motive." *Id.* "'[T]here need only be a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial.'" *Id.* (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991)). The trial court therefore possesses "substantial discretion to admit prior consistent statements under the rule." *Id.* at 804–05. "There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate." *Id.* at 805.

In *Hammons*, the Court of Criminal Appeals considered whether the trial court abused its discretion in admitting the complainant's prior consistent statements made to two witnesses years before the trial regarding the sexual abuse at issue. There, the appellant argued that the statements were not admissible under rule 801(e)(1)(B) because on cross-examination defense counsel merely brought out the complainant's "inconsistency on dates" of the alleged sexual encounters and did not charge her with fabrication or improper motive. *Id.* at 807. The Court of Criminal Appeals noted that the proper predicate for the admission of a prior consistent statement "is laid by the content, tone, and tenor of defense cross-examination." *Id.* at 808. The *Hammons* court held that the relevant inquiry is, "[f]rom the totality of the questioning, giving deference to the trial judge's assessment of tone, tenor, and demeanor, could a reasonable trial judge conclude

that the cross-examiner is mounting a charge of recent fabrication or improper motive?" *Id.* at 808–09. If the answer is "yes," the trial court does not abuse its discretion in admitting a prior consistent statement made before any motive to fabricate arose. *Id.* at 809. Reviewing courts also may consider "clues from the voir dire, opening statements, and closing arguments." *Id.* at 808. The *Hammons* court concluded that, while defense counsel's questioning was "subtle," the trial court did not abuse its discretion in concluding that the appellant was making an implied charge of fabrication during cross-examination, and in admitting the complainant's prior consistent statements. *Id.*

Appellant challenges the trial court's admission of K.G.'s journal statements based on two of the four requirements under rule 801(e)(1)(B): a charge of recent fabrication and whether the prior statements were consistent.

### A. Charge of recent fabrication

Here, similar to the appellant in *Hammons*, appellant contends that defense counsel merely appropriately cross-examined K.G. on the inconsistency between her trial testimony concerning appellant's attempts to get her to perform oral sex by placing his penis in her mouth and her 2008 note to her family, in which K.G. stated "he never raped me" and "he just touched me inappropriately." Appellant thus argues there was no suggestion of recent fabrication. However, as in *Hammons*, appellant's argument fails.

At trial, defense counsel vigorously cross-examined K.G. about this inconsistency:

> Now, I'd like to ask you a little bit about the letter that you left when you ran away from home. Let me back up a little bit.
>
> As a matter of fact, I'm going to ask you some questions that might be a little personal, so I apologize if I offend you. When you wrote that letter, how old were you?

6

A.     Nineteen.  Just turned 19.

Q.     Nineteen.  So at that point, would you consider yourself as an adult?

A.     Yes.

Q.     As a 19-year-old adult, do you—would it be fair to say that you know, or you knew at that point what sex is?

A.     Yes.

Q.     Okay.  And would you consider oral sex sex?

A.     Yes.

Q.     Okay.  So as a 19-year-old adult woman, you know the definition of sex, and in your definition of sex that includes oral sex?

A.     Yes.

Q.     Okay.  Do you remember what you wrote in that letter?

A.     Not word for word, no.

* * *

Q.     (BY MR. PERAZZA)  Did you ever tell anybody that Mr. Williams did not rape you?

A.     I don't remember saying anything like that.

Q.     Okay.  So you don't remember telling anybody, or writing in a letter that you were not raped?

A.     I don't remember writing it.  I don't remember saying it.

* * *

Q.     Is that the letter you wrote when you ran away from home?

A.     Yes.

* * *

Q.     (By MR. PERAZZA) Okay.  So now I ask you again, do you recall ever writing or telling anybody that somebody never raped you?

A.     Yes.

Q.     You did?

A.     I wrote it in the letter.

Q.     Okay.  You wrote it yourself?  And you also wrote in that letter,

7

"He just touched me inappropriately"?

A.     Yes.

Q.     Okay. Now, at this point, the cat is out of the bag. You no longer care about breaking up the family or anything else. You've had enough. You want to get everything out in the open?

A.     Yes.

Q.     And yet, in your own words you say, "He never raped me"?

A.     Uh-huh.

Q.     Now, at this point, the alleged oral sex that's happened, that was before—that predates this letter, right? It happened before this letter?

A.     Yes.

Q.     Okay. Why would you say that you were never raped, as a 19-year-old woman who knows what sex is, knows that oral sex is sex, knows what rape is, say that you were never raped, if now your testimony is that you were raped?

A.     Because I was speaking—

*  *  *

Q.     (BY MR. PERAZZA) Would you consider somebody forcing somebody else to perform oral sex on them rape?

A.     Yes.

Q.     Okay. Is what your testimony—is it your testimony that Mr. Williams forced you to perform oral sex on him?

A.     Yes.

Q.     So you would consider that rape?

A.     Yes, I guess.

Q.     Okay. Why did you specifically put in this letter that you were not raped?

A.     Because I didn't know that that would consist of rape.

During Kathy's testimony, the State sought to introduce Kathy's recollections of statements written by K.G. in their shared high school journal.

8

The State anticipated that defense counsel would object to Kathy's testimony as to what was actually written in the journal as hearsay:

> And let me just be clear, on cross-examination of the victim, K[.] G[.], defense attorney brought out through the letter that she wrote when she ran away, that she only stated that the defendant had touched her and had not actually raped her. Indicating that, I believe, in his questioning that she never said that he made her perform oral sex and some other things. I can't remember the exact terminology or his exact questioning.
>
> But he is implying that she's making this portion up. The portion of where he forced her to give her—give him oral sex. Where, in fact, back in 2006, when she was writing in these journals to her friends, she actually told her friends. And again, it's in the context of like she's talking about a friend or someone else. She says that my—or this person, my friend's uncle has actually been messing with me, and he tried—or excuse me—again the context. He's actually been messing with my friend and, in fact, he tried to make my friend give him a blow job.
>
> So again, under 801, I believe it's 1, it's 801(e)[(]1[)](b), I don't believe that constitutes hearsay.

After the State made a brief proffer of Kathy's testimony—that K.G. had written in the journal in the fall of 2006 that her friend's uncle had tried to get the friend to give him a "blow job," and then in the spring of 2007 that the friend was actually K.G. herself—defense counsel objected that it was irrelevant and hearsay, and argued that any implied fabrication was not recent.

The court overruled the objection, finding the statements admissible under rule 801(e)(1)(B). The trial court specifically noted that it believed "defense counsel's cross-examination of the complainant, regarding the rape being equated to oral sex was an attempt to cross-examine her live testimony before this jury, concerning the oral sex incidences." The court made its ruling, "given the context of this record, reflection of complainant's testimony, and this witness' testimony

9

now, proffered testimony." When Kathy's testimony resumed, the court noted appellant's running objection to hearsay and overruled it.

In his closing argument, defense counsel directly accused K.G. of fabricating the sexual assault:

> After everything is said and done, after all the cards are on the table, what do we have? We have the word of Ms. K[.] G[.] That's it. That is what we have. Ladies and gentlemen that word is not good. You cannot trust that word. Ms. G[.] is a manipulator. Ms. G[.] is a liar. Ms. G[.] will tell you whatever she feels she needs to tell you to get whatever it is that she feels she needs to get. She is a manipulator.
>
> Ms. G[.] sat in that chair and lied to us.
>
> * * *
>
> And then we come to the biggest one of them all. The biggest lie here, that Mr. Williams forced her to put her mouth on his penis. She told you that.
>
> Ladies and gentlemen, she told her family, he did not rape me. Not as a 14-year-old child, as a 19-year-old woman, she told her family, he did not rape me. This is a 19-year-old adult woman in college. You think she has any idea what rape was at that point? Absolutely. And what did she say— . . .
>
> He did not rape me. It can't get much clearer than that.

The State in its closing argument attempted to rebut this fabrication charge using the evidence from the journal entries:

> Why in the world would she just single out the defendant, her uncle? She wants you to believe that the pressure was so bad, that she had t[o] makeup this grand story about a sexual assault. There is one problem with that. One very big problem with that.
>
> K[.] G[.] tells her friends what happens to her in 2006. If she made this up in 2008, how in the world does she tell them what happened in 2006? Remember what Kathy. . . tells you. . . .

Here, the record reasonably supports the trial court's ruling that the out-of-

court statements which K.G. wrote in the journal she shared with her friends were offered to rebut an implied charge of recent fabrication. K.G. testified on direct examination that appellant sexually assaulted her by forcing his penis into her mouth for oral sex and that the first time this occurred was after her sixteenth birthday. On cross-examination, defense counsel convinced K.G. to agree that forced oral sex was rape and questioned her extensively about what she told her family in 2008—that she had been "messed with," but had not been "raped." At the time the trial court was considering whether to admit Kathy's testimony, appellant argued it was the 2008 note that was the implied fabrication, which did not meet the recentness requirement of rule 801(e)(1)(B). But, in fact, appellant argued that the 2008 note was the truth, while K.G. had fabricated her testimony on the stand. Thus, the recent-fabrication requirement of the rule was met.

Reviewing the record in the light most favorable to the trial court's ruling, from the totality of the questioning, and giving due deference to its assessment of tone, tenor, and demeanor, we conclude that the court reasonably could have found that defense counsel's cross-examination implicitly charged that K.G.'s direct-examination testimony that appellant sexually assaulted her by forcing her to engage in oral sex was a recent fabrication—made during the trial—in light of her allegedly conflicting statement in the 2008 note. *See Hammons*, 239 S.W.3d at 808–09. Moreover, both sets of closing arguments refute appellant's assertion that defense counsel did not imply K.G. fabricated her testimony at trial. Even if defense counsel's implication on cross-examination that K.G. had fabricated the oral sex allegations for trial could be described as "subtle," as in *Hammons*, counsel's "implied charge became vociferously express during appellant's closing argument"[2] when he argued that K.G.'s "biggest lie" of all, when she "sat in that

---

[2] *See id.* at 807–08.

11

chair and lied to us," was that appellant forced her to engage in oral sex. Then the State in its closing attempted to rebut that fabrication charge using what K.G. told Kathy though their shared journal. Therefore, the trial court did not abuse its discretion in admitting Kathy's testimony regarding K.G.'s journal statements.

## B. Consistency of prior statements

In his brief, appellant further argues that K.G.'s journal statements did not meet the consistency requirement of rule 801(e)(1)(B). He contends that K.G.'s trial testimony included a description of forcible contact while the journal entries merely charged that her uncle tried to get her to perform oral sex.

We conclude that the trial court reasonably could have found that the prior statements were consistent for purposes of rule 801(e)(1)(B). Appellant cites *Kipp v. State* for the proposition that K.G.'s trial testimony and her journal statements about the oral sex were not consistent; however, *Kipp* is distinguishable. 876 S.W.2d 330 (Tex. Crim. App. 1994). There, the court found that the complainant's prior statement was not consistent because it related to an entirely different incident of sexual assault than the one charged. *Id.* at 338. In contrast, K.G.'s journal statements concerned the exact same incidents of sexual assault about which complainant testified at trial. *Id.* ("[A] prior consistent statement for purposes of Rule 801(e)(1)(B) must relate to the same matter or incident testified to by the declarant at trial."). Appellant argues that K.G.'s journal statements that appellant was "trying to get her to perform oral sex on him" were inconsistent with her more-detailed trial testimony. However, K.G.'s journal statements do not necessarily exclude acts of forcible contact and "are generally consistent with the testimony at trial." *See Hammons*, 239 S.W.3d at 804. Therefore, the trial court did not abuse its discretion in admitting K.G.'s journal statements as prior consistent statements.

12

## C. Any error is harmless.

Notwithstanding the foregoing, the record also reflects that, on direct examination by the State, K.G. acknowledged she made out-of-court statements to Kathy and another friend in their shared high school journal. K.G. testified that her aunt Sherri was not the first person whom she told about what appellant had been doing to her, but that she earlier—beginning in her sophomore year—had told her two friends, including Kathy, through the journal. K.G. further testified that she initially told them the abuse was happening to a "friend": "I told them basically I have a friend that's—that's going through this problem and I want to know what— what you would do to help her or what would you say." K.G. finally told them that "in fact" the abuse was happening to her.

With this evidence coming in without objection or limitation, "it became part of the general evidence in the case, and the jury could have used it for any purpose." *Klein*, 273 S.W.3d at 318. Under these circumstances, we conclude that any error in admitting the testimony of Kathy about K.G.'s out-of-court statements in the journal is harmless in that the general substance of this evidence was admitted without objection or limitation during K.G.'s testimony on direct examination by the State. *See id.* at 317 (finding harmless error in sexual assault case involving similar direct examination of complainant); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when such other evidence was received without objection, either before or after the complained-of ruling.").

## IV. CONCLUSION

Having overruled appellant's sole issue on appeal of his two convictions, we affirm the judgments of the trial court.


/s/    Tracy Christopher
Justice


Panel consists of Justices Frost, Christopher, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).