

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-09-117-CR

BENJAMIN BEEMER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Benjamin Beemer guilty of three counts of aggravated assault and assessed his punishment at eight years' confinement for each count. The trial court sentenced him accordingly, ordering that the sentences run concurrently. In two issues, Beemer complains that the trial

---

[1] *See* Tex. R. App. P. 47.4.

court erred by refusing to grant his motion for mistrial after the State violated his motion in limine and that the evidence is legally and factually insufficient to sustain his conviction.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

One clear, sunny afternoon, Jane Yvette Laird was driving south on FM 156, a two-lane road, in Denton County, Texas when she noticed a black truck, driven by Beemer, rapidly approaching from behind.  Laird slowed her car to let the truck pass.  The truck crossed the center line into the lane for northbound traffic to pass Laird's car, but it did not pull back into the southbound lane after passing Laird.  Laird became concerned because they were approaching a bridge and an incline; she could not see over the incline so she stopped her car and watched as the black truck continued in the wrong lane.

Shelby Baugh[2] was traveling north on FM 156 and saw Beemer's black truck pass Laird's car and stay in the northbound lane heading straight towards Baugh's white car.  Baugh and Beemer reached the bridge at the same time; Baugh swerved into the southbound lane to avoid colliding with Beemer.  The two vehicles brushed each other as they passed.  Baugh pulled back into the

---

[2]... At the time of the incident, her name was Shelby Smith.

northbound lane and flashed her lights at Laird. She was crying and hysterical as she pulled up next to Laird's car; she told Laird that she had almost wrecked.

In the meantime, Beemer pulled back into the southbound lane and continued traveling south on FM 156. Brian Spaid and his then-girlfriend Margaret Kidder were traveling north on FM 156 in Spaid's Ford truck and saw Beemer's black truck approaching in the southbound lane. The two vehicles were about to pass each other when Beemer veered his truck straight for Spaid's truck. Beemer's truck crossed the middle line and drove "at a perfect angle to hit just head on" with Spaid's truck. Kidder screamed, and Spaid steered for the ditch. Beemer's truck hit the driver's side of Spaid's truck. Spaid was thrown against the steering wheel and suffered a bruised chest and lower abdomen from hitting the steering wheel and airbag; Kidder ended up halfway on the floorboard under her seatbelt and suffered ruptured and protruding disks in her neck and back.

Laird, who had seen the dust and debris in the air while talking to Baugh, told Baugh that the black truck had just wrecked and that they needed to go to the scene. Baugh turned her vehicle around, and the two women drove southbound until they reached the wreck.

Keith Janopoulos was driving approximately 100 yards behind Spaid with his two-year-old son in the passenger seat. He saw the collision and stopped

3

to help. He first approached Beemer and asked if he was okay; Beemer responded that he was. Janopoulos started walking to Spaid's truck to check on its passengers but looked back and saw Beemer taking items from his own truck and putting them in Janopoulos's truck. Beemer unstrapped Janopoulos's son from his car seat, placed him in the ditch, and got in the driver's side of Janopoulos's truck. Janopoulos ran back to his truck and told Laird, who was standing nearby, to take his son up to the highway. He then grabbed a chain from the bed of his truck and began swinging it like a lariat, threatening Beemer if he did not get out of Janopoulos's truck. Beemer said repeatedly, "I got to go. You got to—you got to let me go. You got to let me get out of here." Janopoulos and another man who had arrived at the scene got Beemer out of the truck and detained him until officers arrived. Beemer also tried to get into the other man's truck.

Richard Hooten, who was a state trooper at the time and has since retired, arrived at the scene and asked Beemer what had happened. Beemer did not respond to Hooten's questions; he folded his arms and stared straight ahead. Hooten finally got Beemer to write down his age, address, driver's license number, and whether he was wearing a seatbelt, but Beemer would not answer questions about the accident. Hooten checked his eyes for nystagmus, or signs of intoxication, and found none.

4

Beemer was taken to the hospital, where Hooten continued to try to speak with him about what had happened. Beemer would not talk to the trooper and, when Hooten was not in the room, would poke his head out and run into the next room. Hooten thought Beemer might try to run from the hospital. Hooten ultimately arrested Beemer for aggravated assault with a motor vehicle.

### III. MOTION IN LIMINE

In his first issue, Beemer argues that the trial court erred by refusing to grant his motion for mistrial after the State violated his motion in limine. Before trial, Beemer filed a motion in limine, requesting that the court order the State and its witnesses to not mention any opinion that Beemer was attempting to commit suicide without first holding a hearing outside of the jury's presence to determine admissibility. The trial court granted his motion. On appeal, Beemer contends that he was entitled to a mistrial after the following exchange took place during the State's questioning of Hooten:

> Q. Now, after gathering all the information, did you also – without getting into what they told you, but did you actually speak to the people there at the hospital about his condition, whether or not there was any intoxicant on board, if he had any major injuries or anything like that? After gathering all of that information, what did you decide?

> A. That the Defendant was not intoxicated. In my opinion, he was attempting to take his own life based off of other information I was finding out from the Army.

Defense counsel objected that the testimony had been addressed in his motion in limine, and the trial court sustained the objection. The trial court instructed the jury to disregard Hooten's last statement, and it denied defense counsel's request for a mistrial.

We review the trial court's denial of a motion for mistrial under an abuse of discretion standard. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Ladd*, 3 S.W.3d at 567; *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), *cert. denied*, 500 U.S. 960 (1991).

A motion for mistrial will be granted only in "extreme circumstances, where the prejudice is incurable." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *see Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Generally, a prompt instruction to disregard will cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783

(Tex. Crim. App. 2000). Further, we are to presume the jury will follow the court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). In considering whether an instruction is sufficient to cure error, courts consider whether the reference was direct or implied, intentional or inadvertent, detailed or vague, and whether the topic was pursued once the instruction was given. *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994); *Waldo v. State*, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).

In this case, the trial court promptly instructed the jury to disregard the complained-of statement, and we presume that the jury followed that instruction. *See Colburn*, 966 S.W.2d at 520. Although the complained-of testimony was a direct reference to the testimony covered by the motion in limine—opinions of attempted suicide—it was not responsive of the State's question. *See Kipp*, 876 S.W.2d at 339. The State asked whether Hooten had talked to hospital staff about whether Beemer was intoxicated or was suffering from a major injury and asked generally what Hooten had decided to do after gathering all the information about the accident; it did not seek Hooton's opinion on whether Beemer was attempting suicide. After the trial court instructed the jury to disregard Hooten's answer, the State continued its questioning by clarifying, "Not so much the reasons, but what did you decide

7

to do at that point?" The State did not refer to this testimony again, did not attempt to highlight this testimony, and did not make any use of it at all.

For these reasons, we conclude that the trial court's instruction to disregard cured any potential prejudice from the testimony. *See Ovalle*, 13 S.W.3d at 783. Accordingly, we hold that the trial court did not abuse its discretion by denying Beemer's motion for mistrial, and we overrule Beemer's first issue. *See Russeau*, 171 S.W.3d at 885; *Ovalle*, 13 S.W.3d at 783.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second issue, Beemer argues (1) that legally and factually insufficient evidence exists that he drove his truck into Baugh's car to support his conviction for aggravated assault on Baugh as alleged in Count 1 of the indictment and (2) that legally insufficient evidence exists that he possessed the requisite mens rea to convict him of aggravated assault.

### A. Standards of Review

#### 1. Legal Sufficiency Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v.*

8

*Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## 2. Factual Sufficiency Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor

of the conviction.  *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence.  *Id.*  We may not simply substitute our judgment for the factfinder's.  *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8.  Our deference in this regard safeguards the defendant's right to a trial by jury.  *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### B. Elements of Aggravated Assault with a Motor Vehicle

A person commits assault if he (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens another with imminent bodily injury. Tex. Penal Code Ann. § 22.01(a)(1), (2) (Vernon Supp. 2009). The assault becomes an aggravated assault if the person uses or exhibits a deadly weapon. *Id.* § 22.02(a)(2).

A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when he has the conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or that the result will occur. *Id.* § 6.03(c).

C. Sufficiency of Evidence to Support Conviction for Count I

Count 1 alleged that Beemer "intentionally or knowingly threaten[ed] [Baugh] with imminent bodily injury by driving a motor vehicle into a motor vehicle operated by [Baugh]." *See id.* § 22.01(a)(2). Beemer argues that the evidence is legally and factually insufficient to prove that he actually hit Baugh's car as alleged in the indictment.

### 1. Legally Sufficient Evidence of Count 1

Viewing the evidence in the light most favorable to the verdict, we find that the record does contain evidence that Beemer drove his truck into Baugh's car. Baugh testified that she saw Beemer's truck pass Laird's car and continue driving "dead set straight on" in the wrong lane headed for her car. When she realized he was not moving back into his lane, she quit accelerating. She felt threatened and saw her life flash before her eyes before her "flight instinct" set in and she veered into the other lane at the last second. She did not realize that their vehicles had impacted until she looked later and saw that Beemer's truck had "barely brushed her car," leaving tire marks on her car's hubcap and a small scratch on its fender. Hooten also testified that the back right panel of Baugh's car had "a little" damage, "just a scratch," and that the front right of Beemer's vehicle had a little "buff mark." Hooten testified that the contact was not enough "to cause them to spin or anything of that nature. Just a minor touch."

13

From this evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Beemer drove his truck into Baugh's car sufficient to convict him of aggravated assault as alleged in Count 1 of the indictment. Consequently, we hold that the evidence is legally sufficient to support Beemer's conviction for aggravated assault on Baugh. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

*2. Factually Sufficient Evidence of Count 1*

A neutral review of the evidence also reveals that the jury could reasonably find that Beemer drove his truck into Baugh's car. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414.

Beemer argues that it is "physically impossible" for the two vehicles, each traveling at approximately 60 miles per hour, to have touched each other without spinning out of control. But nothing in the record supports his allegations. Instead, Hooten's and Baugh's testimony both demonstrate that Beemer drove his truck straight towards Baugh's car, causing their vehicles to brush against each other as Baugh swerved into the opposite lane to narrowly avoid a head-on collision.

Viewing the evidence in a neutral light, we find no objective basis for holding that the jury's verdict was clearly wrong or manifestly unjust or that it is contradicted by the great weight and preponderance of the evidence. *See*

14

*Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the jury's verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Baugh's conviction for aggravated assault as alleged in Count 1 of the indictment.

### D. Legally Sufficient Evidence of Requisite Mental State

Beemer also argues in his second issue that legally insufficient evidence existed that he acted intentionally or knowingly when he drove his truck into Baugh's car or intentionally, knowingly, or recklessly when he drove his truck into Spaid's truck. He argues that the evidence shows that he was "likely asleep or not paying attention."

Direct evidence of the requisite mental state is not required. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). The jury may infer the existence of the requisite mental state from any facts tending to prove its existence, including the acts, words, and conduct of the accused and the method of committing the crime. *See id.*

Here, Baugh explained that Beemer "[n]ever veered from the lane at all" when driving towards her. After missing Baugh, Beemer merged back into the

15

correct lane until just as he was about to pass Spaid's truck.  Spaid testified that Beemer "veered straight for [him]" in a "perfect angle" as the two were about to pass each other and that he had no doubt that Beemer intentionally swerved to hit him.

To support his argument, Beemer points to Janopoulos's testimony that he saw Beemer's truck "just gradually" cross the center line, but Janopoulos further explained, "It looked more like just a[n] intentional driving across the lanes . . . ."  Kidder testified that she saw Beemer's hands on the wheel and saw him turn the wheel toward Spaid's truck.

Beemer's conduct after the wreck also constitutes evidence of his intentional and knowing conduct.  *See, e.g.*, *Dobbins v. State*, 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd, untimely filed) (holding evidence that defendant kept driving after hitting victim constituted evidence of his intent to threaten victim and knowledge that his actions would have that result); *Rodriguez v. State*, 129 S.W.3d 551, 564 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant's attempt to flee cast doubt on his claim that he did not know co-defendant had stolen a cash register).  After the wreck, Beemer tried to flee in two different vehicles not belonging to him, he would not talk to the trooper at the scene, and he acted like he might try to run from the hospital.

16

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Beemer acted intentionally or knowingly sufficient to support his conviction for aggravated assault as alleged in Count 1 of the indictment and that he acted intentionally, knowingly, or recklessly sufficient to support his conviction for aggravated assault as alleged in Counts 2 and 3 of the indictment. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

### E. Sufficient Evidence

Having found the evidence factually sufficient to support Beemer's conviction for aggravated assault as alleged in Count 1 of the indictment and having found the evidence legally sufficient to support his conviction for aggravated assault as alleged in all three counts of the indictment, we overrule Beemer's second issue.

## V. CONCLUSION

Having overruled Beemer's two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 18, 2010