COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-117-CR

 

 

BENJAMIN
BEEMER                                                             APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH DISTRICT COURT OF
DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I. Introduction








A jury found Appellant Benjamin Beemer guilty of
three counts of aggravated assault and assessed his punishment at eight years= confinement for each count.  The trial court sentenced him accordingly,
ordering that the sentences run concurrently. 
In two issues, Beemer complains that the trial court erred by refusing
to grant his motion for mistrial after the State violated his motion in limine
and that the evidence is legally and factually insufficient to sustain his conviction.  We will affirm.

II. Factual and Procedural Background

One clear, sunny afternoon, Jane Yvette Laird was
driving south on FM 156, a two-lane road, in Denton County, Texas when she
noticed a black truck, driven by Beemer, rapidly approaching from behind.  Laird slowed her car to let the truck pass.  The truck crossed the center line into the
lane for northbound traffic to pass Laird=s car, but it did not pull back into the
southbound lane after passing Laird. 
Laird became concerned because they were approaching a bridge and an
incline; she could not see over the incline so she stopped her car and watched
as the black truck continued in the wrong lane. 








Shelby Baugh[2]
was traveling north on FM 156 and saw Beemer=s black truck pass Laird=s car and stay in the northbound lane heading
straight towards Baugh's white car. 
Baugh and Beemer reached the bridge at the same time; Baugh swerved into
the southbound lane to avoid colliding with Beemer.  The two vehicles brushed each other as they
passed.  Baugh pulled back into the
northbound lane and flashed her lights at Laird.  She was crying and hysterical as she pulled
up next to Laird=s
car; she told Laird that she had almost wrecked. 

In the meantime, Beemer pulled back into the
southbound lane and continued traveling south on FM 156.  Brian Spaid and his then-girlfriend Margaret
Kidder were traveling north on FM 156 in Spaid=s Ford truck and saw Beemer=s black truck approaching in the southbound
lane.  The two vehicles were about to
pass each other when Beemer veered his truck straight for Spaid=s truck. 
Beemer=s
truck crossed the middle line and drove Aat a perfect angle to hit just head on@ with Spaid=s truck. 
Kidder screamed, and Spaid steered for the ditch.  Beemer=s truck hit the driver=s side of Spaid=s truck. 
Spaid was thrown against the steering wheel and suffered a bruised chest
and lower abdomen from hitting the steering wheel and airbag; Kidder ended up
halfway on the floorboard under her seatbelt and suffered ruptured and
protruding disks in her neck and back.   

Laird, who had seen the dust and debris in the
air while talking to Baugh, told Baugh that the black truck had just wrecked
and that they needed to go to the scene. 
Baugh turned her vehicle around, and the two women drove southbound
until they reached the wreck. 








Keith Janopoulos was driving approximately 100
yards behind Spaid with his two-year-old son in the passenger seat.  He saw the collision and stopped to
help.  He first approached Beemer and
asked if he was okay; Beemer responded that he was.  Janopoulos started walking to Spaid=s truck to check on its passengers but looked
back and saw Beemer taking items from his own truck and putting them in
Janopoulos=s
truck.  Beemer unstrapped Janopoulos=s son from his car seat, placed him in the ditch,
and got in the driver=s
side of Janopoulos=s
truck.  Janopoulos ran back to his truck
and told Laird, who was standing nearby, to take his son up to the
highway.  He then grabbed a chain from
the bed of his truck and began swinging it like a lariat, threatening Beemer if
he did not get out of Janopoulos=s truck. 
Beemer said repeatedly, AI got to go. 
You got toCyou
got to let me go.  You got to let me get
out of here.@  Janopoulos and another man who had arrived at
the scene got Beemer out of the truck and detained him until officers
arrived.  Beemer also tried to get into
the other man=s
truck. 

Richard Hooten, who was a state trooper at the
time and has since retired, arrived at the scene and asked Beemer what had
happened.  Beemer did not respond to
Hooten=s questions; he folded his arms and stared
straight ahead.  Hooten finally got
Beemer to write down his age, address, driver=s license number, and whether he was wearing a
seatbelt, but Beemer would not answer questions about the accident.  Hooten checked his eyes for nystagmus, or
signs of intoxication, and found none.   








Beemer was taken to the hospital, where Hooten
continued to try to speak with him about what had happened.  Beemer would not talk to the trooper and,
when Hooten was not in the room, would poke his head out and run into the next
room.  Hooten thought Beemer might try to
run from the hospital.  Hooten ultimately
arrested Beemer for aggravated assault with a motor vehicle. 

III.  Motion in
Limine

In his first issue, Beemer argues that the trial
court erred by refusing to grant his motion for mistrial after the State
violated his motion in limine.  Before
trial, Beemer filed a motion in limine, requesting that the court order the
State and its witnesses to not mention any opinion that Beemer was attempting
to commit suicide without first holding a hearing outside of the jury=s presence to determine admissibility.  The trial court granted his motion.  On appeal, Beemer contends that he was
entitled to a mistrial after the following exchange took place during the State=s questioning of Hooten:

Q.     Now,
after gathering all the information, did you also B without getting into what they told you, but did you actually speak
to the people there at the hospital about his condition, whether or not there
was any intoxicant on board, if he had any major injuries or anything like
that?  After gathering all of that
information, what did you decide?  

 








A.     That
the Defendant was not intoxicated.  In my
opinion, he was attempting to take his own life based off of other information
I was finding out from the Army. 

 

Defense counsel objected that the testimony had
been addressed in his motion in limine, and the trial court sustained the
objection.  The trial court instructed
the jury to disregard Hooten=s last statement, and it denied defense counsel=s request for a mistrial.   

We review the trial court=s denial of a motion for mistrial under an abuse
of discretion standard. Russeau v. State, 171 S.W.3d 871, 885 (Tex.
Crim. App. 2005), cert. denied, 548 U.S. 926 (2006); Ladd v. State,
3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000). The determination of whether a given error necessitates a mistrial must
be made by examining the particular facts of the case.  Ladd, 3 S.W.3d at 567; Hernandez v.
State, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), cert. denied, 500
U.S. 960 (1991).








A motion for mistrial will be granted only in Aextreme circumstances, where the prejudice is
incurable.@
Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); see Wood
v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  Generally, a prompt instruction to disregard
will cure error associated with an improper question and answer. Ovalle v.
State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).  Further, we are to presume the jury will
follow the court=s
instructions.  Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998). 
In considering whether an instruction is sufficient to cure error,
courts consider whether the reference was direct or implied, intentional or
inadvertent, detailed or vague, and whether the topic was pursued once the
instruction was given.  Kipp v. State,
876 S.W.2d 330, 339 (Tex. Crim. App. 1994); Waldo v. State, 746 S.W.2d
750, 752 (Tex. Crim. App. 1988).








In this case, the trial court promptly instructed
the jury to disregard the complained-of statement, and we presume that the jury
followed that instruction.  See
Colburn, 966 S.W.2d at 520.  Although
the complained-of testimony was a direct reference to the testimony covered by
the motion in limineCopinions
of attempted suicideCit
was not responsive of the State=s question. 
See Kipp, 876 S.W.2d at 339. 
The State asked whether Hooten had talked to hospital staff about
whether Beemer was intoxicated or was suffering from a major injury and asked
generally what Hooten had decided to do after gathering all the information
about the accident; it did not seek Hooton=s opinion on whether Beemer was attempting
suicide.  After the trial court
instructed the jury to disregard Hooten=s answer, the State continued its questioning by
clarifying, ANot
so much the reasons, but what did you decide to do at that point?@  The State
did not refer to this testimony again, did not attempt to highlight this
testimony, and did not make any use of it at all.  

For these reasons, we conclude that the trial court=s instruction to disregard cured any potential
prejudice from the testimony.  See
Ovalle, 13 S.W.3d at 783. 
Accordingly, we hold that the trial court did not abuse its discretion
by denying Beemer=s
motion for mistrial, and we overrule Beemer=s first issue. 
See Russeau, 171 S.W.3d at 885; Ovalle, 13 S.W.3d at 783.

IV.
Sufficiency of the Evidence

In his second issue, Beemer argues (1) that
legally and factually insufficient evidence exists that he drove his truck into
Baugh=s car to support his conviction for aggravated
assault on Baugh as alleged in Count 1 of the indictment and (2) that legally
insufficient evidence exists that he possessed the requisite mens rea to
convict him of aggravated assault.  

A.  Standards of Review

1.  Legal Sufficiency Standard of Review








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder. Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict.@  Hooper
v. State, 214 S.W.3d 9, 16B17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








2.  Factual
Sufficiency Standard of Review

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party. Steadman v. State, 280 S.W.3d 242, 246 (Tex.
Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.  








Unless we conclude that it is necessary to
correct manifest injustice, we must give due deference to the factfinder=s determinations, Aparticularly those determinations concerning the
weight and credibility of the evidence.@  Johnson
v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); see Steadman, 280
S.W.3d at 246.  Evidence is always factually
sufficient when it preponderates in favor of the conviction.  Steadman, 280 S.W.3d at 247; see
Watson, 204 S.W.3d at 417.  

In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally sufficient
evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to
overturn [the] conviction.@  Watson,
204 S.W.3d at 417.   We cannot conclude
that a conviction is clearly wrong or manifestly unjust simply because we would
have decided differently than the jury or because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the factfinder=s.  Johnson,
23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  Unless the record clearly reveals
that a different result is appropriate, we must defer to the jury=s determination of the weight to be given
contradictory testimonial evidence because resolution of the conflict Aoften turns on an evaluation of credibility and
demeanor, and those jurors were in attendance when the testimony was delivered.@  Johnson,
23 S.W.3d at 8.  Our deference in this
regard safeguards the defendant=s right to a trial by jury.  Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008).       








An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 


B.  Elements of Aggravated Assault with a Motor Vehicle

A person commits assault if he (1) intentionally,
knowingly, or recklessly causes bodily injury to another or (2) intentionally
or knowingly threatens another with imminent bodily injury.  Tex. Penal Code Ann. ' 22.01(a)(1), (2) (Vernon Supp. 2009).  The assault becomes an aggravated assault if
the person uses or exhibits a deadly weapon. 
Id. ' 22.02(a)(2).  

 A person
acts intentionally with respect to the nature of his conduct or to a result of
his conduct when he has the conscious objective or desire to engage in the
conduct or cause the result.  Id. ' 6.03(a) (Vernon 2003).  A person acts knowingly with respect to a
result of his conduct when he is aware that his conduct is reasonably certain
to cause the result.  Id. ' 6.03(b). 
A person acts recklessly with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
that the result will occur.  Id. ' 6.03(c).








C. Sufficiency of Evidence to Support Conviction
for Count I

Count 1 alleged that Beemer Aintentionally or knowingly threaten[ed] [Baugh]
with imminent bodily injury by driving a motor vehicle into a motor vehicle
operated by [Baugh].@  See id. ' 22.01(a)(2). 
Beemer argues that the evidence is legally and factually insufficient to
prove that he actually hit Baugh=s car as alleged in the indictment.  

1.  Legally
Sufficient Evidence of Count 1

Viewing the evidence in the light most favorable
to the verdict, we find that the record does contain evidence that Beemer drove
his truck into Baugh=s
car.  Baugh testified that she saw Beemer=s truck pass Laird=s car and continue driving Adead set straight on@ in the wrong lane headed for her car.  When she realized he was not moving back into
his lane, she quit accelerating.  She
felt threatened and saw her life flash before her eyes before her Aflight instinct@ set in and she veered into the other lane at the
last second.  She did not realize that
their vehicles had impacted until she looked later and saw that Beemer=s truck had Abarely brushed her car,@ leaving tire marks on her car=s hubcap and a small scratch on its fender.  Hooten also testified that the back right
panel of Baugh=s
car had Aa little@ damage, Ajust a scratch,@ and that the front right of Beemer=s vehicle had a little Abuff mark.@  Hooten
testified that the contact was not enough Ato cause them to spin or anything of that
nature.  Just a minor touch.@ 








From this evidence, we conclude that a rational
trier of fact could have found beyond a reasonable doubt that Beemer drove his
truck into Baugh=s
car sufficient to convict him of aggravated assault as alleged in Count 1 of
the indictment.  Consequently, we hold
that the evidence is legally sufficient to support Beemer=s conviction for aggravated assault on
Baugh.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  

2.  Factually Sufficient Evidence of Count 1

 A neutral
review of the evidence also reveals that the jury could reasonably find that
Beemer drove his truck into Baugh=s car.  See
Steadman, 280 S.W.3d at 246; Watson, 204 S.W.3d at 414.  

Beemer argues that it is Aphysically impossible@ for the two vehicles, each traveling at
approximately 60 miles per hour, to have touched each other without spinning
out of control.  But nothing in the record
supports his allegations.  Instead,
Hooten=s and Baugh=s testimony both demonstrate that Beemer drove
his truck straight towards Baugh=s car, causing their vehicles to brush against
each other as Baugh swerved into the opposite lane to narrowly avoid a head-on
collision.  








Viewing the evidence in a neutral light, we find
no objective basis for holding that the jury=s verdict was clearly wrong or manifestly unjust
or that it is contradicted by the great weight and preponderance of the
evidence.  See Lancon, 253 S.W.3d
at 704; Watson, 204 S.W.3d at 414B15, 417. 
Rather, the evidence presented at trial was sufficient to support the
jury=s verdict, and no contrary evidence exists that
would render the evidence factually insufficient under the applicable standard
of review.  See Lancon, 253 S.W.3d
at 704; Watson, 204 S.W.3d at 414B15, 417. 
Accordingly, we hold that the evidence is factually sufficient to
support Baugh=s
conviction for aggravated assault as alleged in Count 1 of the indictment.  

D.
Legally Sufficient Evidence of Requisite Mental State 

Beemer also argues in his second issue that
legally insufficient evidence existed that he acted intentionally or knowingly
when he drove his truck into Baugh=s car or intentionally, knowingly, or recklessly
when he drove his truck into Spaid=s truck. 
He argues that the evidence shows that he was Alikely asleep or not paying attention.@ 

Direct evidence of the requisite mental state is
not required.   See Hart v. State,
89 S.W.3d 61, 64 (Tex. Crim. App. 2002). 
The jury may infer the existence of the requisite mental state from any
facts tending to prove its existence, including the acts, words, and conduct of
the accused and the method of committing the crime.  See id.








Here, Baugh explained that Beemer A[n]ever veered from the lane at all@ when driving towards her.  After missing Baugh, Beemer merged back into
the correct lane until just as he was about to pass Spaid=s truck. 
Spaid testified that Beemer Aveered straight for [him]@ in a Aperfect angle@ as the two were about to pass each other and
that he had no doubt that Beemer intentionally swerved to hit him.  

To support his argument, Beemer points to
Janopoulos=s
testimony that he saw Beemer=s truck Ajust gradually@ cross the center line, but Janopoulos further
explained, AIt
looked more like just a[n] intentional driving across the lanes . . . .@  Kidder
testified that she saw Beemer=s hands on the wheel and saw him turn the wheel
toward Spaid=s
truck.  

Beemer=s conduct after the wreck also constitutes
evidence of his intentional and knowing conduct.  See, e.g., Dobbins v. State,
228 S.W.3d 761, 765 (Tex. App.CHouston [14th Dist.] 2007, pet. dism=d, untimely filed) (holding evidence that
defendant kept driving after hitting victim constituted evidence of his intent
to threaten victim and knowledge that his actions would have that result); Rodriguez
v. State, 129 S.W.3d 551, 564 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (holding that defendant=s attempt to flee cast doubt on his claim that he
did not know co‑defendant had stolen a cash register).  After the wreck, Beemer tried to flee in two
different vehicles not belonging to him, he would not talk to the trooper at
the scene, and he acted like he might try to run from the hospital. 








  Viewing
the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that Beemer
acted intentionally or knowingly sufficient to support his conviction for
aggravated assault as alleged in Count 1 of the indictment and that he acted
intentionally, knowingly, or recklessly sufficient to support his conviction
for aggravated assault as alleged in Counts 2 and 3 of the indictment.  See Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778. 


E.
Sufficient Evidence

Having found the evidence factually sufficient to
support Beemer=s
conviction for aggravated assault as alleged in Count 1 of the indictment and
having found the evidence legally sufficient to support his conviction for
aggravated assault as alleged in all three counts of the indictment, we
overrule Beemer=s
second issue.

 

 

 

 

 

 








V. Conclusion

Having
overruled Beemer=s two issues, we affirm the trial court=s judgment.

 

 

SUE WALKER

JUSTICE

 

PANEL: GARDNER, WALKER, and MCCOY, JJ.

 

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: March 18, 2010

 











[1]See Tex. R. App. P. 47.4.





[2]At the time of the incident, her name was Shelby Smith.