

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00195-CR

**JUSTIN LEE BRINEGAR,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2012-1942-C1**

## MEMORANDUM OPINION

Appellant Justin Brinegar was charged in a two-count indictment with the felony offenses of aggravated sexual assault of a child and indecency with a child by contact. The indictment also alleged a prior felony conviction in an enhancement allegation and a second prior felony conviction in a habitual allegation. A jury found Brinegar guilty of aggravated sexual assault of a child but could not reach a verdict on the charge of

indecency with a child by contact.[1]   After a bench trial on punishment, the trial court assessed life imprisonment.  Brinegar appeals, asserting four issues.  We will affirm.

Because Brinegar does not challenge the sufficiency of the evidence, we will only briefly recite the background of the offenses.  S.B., the victim, was Brinegar's daughter and was age three at the time of the offenses, which were alleged to have occurred in the summer of 2009 when S.B. came to Texas from Arkansas to visit Brinegar.  Detective Scaramucci of the McLennan County Sheriff's Office testified that he received a telephone report in November 2009 from Jodi, the victim's mother, but he then lost contact with Jodi until February 2012.  Detective Scaramucci obtained records from S.B.'s therapist and arranged a forensic interview of S.B. by the Sheriff's Office of Pulaski County, Arkansas. The gist of S.B.'s outcry was that Brinegar had her perform oral sex on him.

S.B., who was age eight at the time of trial, testified, as did her grandfather, her therapist, and her half-sister Jordin.  The State also called Dr. William Carter, a psychologist, who testified about the dynamics of child sex-abuse cases.  On cross-examination, Dr. Carter was asked about false outcries and examples of an "overzealous" caseworker and a parent in a bad relationship and how those adults can push a child sex-abuse case.

After the State rested, Brinegar called his eighteen-year-old daughter Casie, who was S.B.'s half-sister and was present in 2009 when S.B. had visited and the offenses had allegedly occurred.  Casie testified that there were no changes in S.B.'s behavior during

---

[1] The trial court declared a mistrial on the charge of indecency with a child by contact.

that visit and that she was with S.B. the entire time. On cross-examination, she repeated that Brinegar was never alone with S.B. unless she (Casie) was using the bathroom, and she said that S.B. was lying and that she never saw her father do anything to S.B.

After the defense rested, the trial court held a hearing on the proposed testimony of R.W., the State's rebuttal witness, who also was Brinegar's daughter. The State argued that the defense had opened the door to extraneous-offense evidence by suggesting that S.B.'s accusations were fabricated and that R.W. was being called to rebut that defensive theory under Rule of Evidence 404(b) and to show Brinegar's propensity under article 38.37 of the Code of Criminal Procedure. The trial court then ordered a voir-dire examination of R.W.

On voir dire, R.W., who was age twenty-two at the time of trial, testified that she had learned that Brinegar was her father when she was fifteen. As a result, she went to his residence for a weekend visit. During that visit, R.W. woke up to find that Brinegar's mouth was touching her vagina and that his fingers were also in her vagina. R.W. said that on a second occasion, when she was seventeen, she and her grandfather had witnessed an automobile accident while driving through Waco, and that led to her having to stay overnight with Brinegar. Again, she awoke to Brinegar touching her again, and her pants had been taken off while she was sleeping. She said that Brinegar told her, "Sex is just sex, no matter who you have it with."

The trial court ruled that the first incident was admissible under article 38.37 and that under Rule 404(b), only Brinegar's statement during the second incident was admissible. Brinegar objected on the basis that this evidence was a violation of his

constitutional rights and that under Rule of Evidence 403, the prejudicial effect of the evidence outweighed its probative value. The trial court overruled Brinegar's objections, and R.W. testified to these events in front of the jury in accordance with the trial court's rulings, but she added that for the first incident, she and Brinegar were sleeping in the same bed.

In his first and second issues, Brinegar asserts that section 2 of article 38.37 is unconstitutional because (1) it allows the State to introduce evidence of a defendant's character to prove that he acted in conformity with that character and (2) because it violates due process.[2]

Neither party's brief addresses preservation of Brinegar's first two issues. "Because preservation of error is a systemic requirement on appeal, a court of appeals should review preservation of error regardless of whether the issue was raised by the parties." *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2005). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). "The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3)

---

[2] The Fourteenth Court of Appeals recently held that section 2 of article 38.37 is constitutional against a due-process challenge. *See Harris v. State,* --- S.W.3d ---, ---, 2015 WL 4984560, at *4-6 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, pet. filed).

promotes the orderly and effective presentation of the case to the trier of fact." *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

The specificity requirement is met if the complaint made at trial was clear enough so as to permit the trial judge to take corrective action when the complaint was made. *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him or her the opportunity to rule on it; and (2) to give opposing counsel the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). A general or imprecise objection may be sufficient to preserve a complaint for appeal, but only if the legal basis for the objection is obvious to the court and to opposing counsel. *Miles v. State*, 312 S.W.3d 909, 911 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006)); *see also Clark v. State*, 65 S.W.3d 333, 339 (Tex. Crim. App. 2012) (stating that, for a complaint to be obvious without having been explicitly stated and still satisfy the purposes of requiring a specific objection, there must be statements or actions in the record that clearly indicate what the judge and opposing counsel understood the argument to be). A complaint is not preserved if the legal basis of the complaint on appeal varies from the complaint at trial. *Lovill*, 319 S.W.3d at 691–92.

After the State's voir dire of R.W., Brinegar's trial counsel objected as follows to the admission of R.W.'s proposed testimony:

> So, Your Honor, my objection would be that is an improper use of an extraneous offense. *It violates the Defendant's constitutional rights*, and I would ask that the Court exclude the statement, especially - - specifically

based on a 403 balancing test. I believe that the prejudicial effect of something like this far outweighs any probative value that it has to this jury. There has been no testimony to rebut the Defense's case that calls any of what this witness has to say into question. [Emphasis added.]

Counsel's objection that section 2 of article 38.37 "violates the Defendant's constitutional rights" is plainly not specific. *See Lovill*, 319 S.W.3d at 692 ("While not always required, when a legal claim is rarely urged, like this one, the complaining party should invoke the controlling federal and state constitutional provisions or use key legal phrases to ensure that the trial judge is informed of the particular complaint. She could have used the words selective prosecution or equal protection under the law or cited the Equal Protection Clause. But Lovill did none of this."); *Emery v. State*, 881 S.W.2d 702, 712 n.17 (Tex. Crim. App. 1994) ("Because appellant does not specify what laws or constitutional provisions are implicated, he has not preserved his state law claim.").

For example, the defendant in *Harris* objected in the trial court to section 2 of article 38.37 "under the due process clause of the Fifth and Fourteenth Amendment to the U.S. Constitution, Article I, Section 19 of the Texas Constitution, and Article I, Section 1.04 of the Texas Code of Criminal Procedure." *Harris*, --- S.W.3d at ---, 2015 WL 4984560, at *3. Because Brinegar's first two issues were not preserved for appellate review, they are overruled.

In issue three, Brinegar argues that the trial court erred in finding that the probative value of R.W.'s testimony was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

> In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining

whether evidence should be excluded under Rule 403. Those factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence.

More recently, the Court has looked to the language of Rule 403 and restated the pertinent factors.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

> *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted).

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (footnote and citations omitted).

Rule 403 "envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Id.* at 322-23 (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)). We review the trial court's determination under Rule 403 for an abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *See Newton*, 301 S.W.3d at 317 (citing *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009)).

By eliciting evidence about false outcries and Casie's testimony that S.B. was lying, Brinegar posited a defensive theory of fabrication by S.B., his eight-year-old daughter, about a sexual assault by him when she was age three. Therefore, in addition to rebutting a fabrication theory, the testimony of R.W., another daughter, of Brinegar's sexual assault of her was highly probative of whether Brinegar could have committed such an act against S.B., along with being evidence of Brinegar's character and that the act was performed in conformity with his character, as allowed by section 2 of article 38.37. Considering this and the other above factors, we cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by R.W.'s testimony and its probative value. Thus, the trial court did not abuse its discretion by overruling Brinegar's Rule 403 objection to R.W.'s testimony. We overrule issue three.

Brinegar's fourth issue asserts that the trial court erred in denying his motion for mistrial after S.B.'s grandfather Joe twice referred to the fact that Brinager had been in jail. The denial of a motion for mistrial, which is appropriate for "highly prejudicial and incurable errors," is reviewed under an abuse-of-discretion standard. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)); *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

> [T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *see also Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Thus, the appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is a tailored version of the test originally set out in *Mosley v. State*, 983 S.W.2d 249, 259-60 (Tex. Crim. App. 1998). *See Hawkins*, 135 S.W.3d at 77. "The *Mosley* factors are: (1) the prejudicial effect, (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Id*.; *see Mosley*, 983 S.W.2d at 259.

Outside the jury's presence, S.B.'s grandfather Joe testified that while S.B.'s mother (Joe's daughter) was in rehab, Brinegar called him to arrange another visitation with S.B., and Joe refused, stating "You know what you did was wrong." Brinegar responded, "I know what I did was wrong … I can't go back to jail." Brinegar added that he would quit bothering them about S.B. if they would not prosecute him. The trial court ruled that Joe could not mention Brinegar's prior incarceration before the jury but could testify to the rest of the telephone conversation, and that is how Joe testified before the jury.

On cross-examination, defense counsel asked about the gap in time that occurred after Jodi's initial report to Texas law enforcement:

> Q. Okay, so there was this whole kind of gap of time while nothing really happened in the investigation where - - I guess while Jodi was in - - in jail or in the treatment facility - - you weren't calling the police or trying to do anything to further - -
>
> A. At that time … they told us that he [Brinegar] was incarcerated. He would be there for a long time and that they would not do anything about this case until he got out.

Q. Okay, so you weren't calling and - - and trying to press anything at that point?

A. It would not do any good. I mean he was - -

A short time later, defense counsel asked Joe about his allegation that Brinegar had kept S.B. longer than he was supposed to and would not let her return to Arkansas and that they were having trouble locating Brinegar:

Q. And you said at that time or at least at the time in 2009 when [S.B.] was down here, you all had trouble getting ahold of anybody from law enforcement who would help find [S.B.] because - -

A. At that time?

Q. Because this is her dad?

A. Yeah, right. They had told us that - - that Texas laws are different than Arkansas laws as far as custody.

Q. And there weren't any court orders or a divorce at that time yet?

A. Not at that time, but she [Jodi] was trying to go through a divorce process and have him served, and while he [Brinegar] was incarcerated she tried to have him served twice.

No objections were made to Joe's references to Brinegar's incarceration. Upon the completion of Joe's testimony, court adjourned for the day. Before testimony began the next day, the trial court held a bench conference regarding Joe's testimony and reviewed the previous day's ruling on what Joe could say about his telephone conversation with Brinegar and then Joe's responses to the subsequent questions on cross-examination. Observing the testimony, the trial court remarked that Joe's references to Brinegar's incarceration were inadvertent and that Brinegar had not objected so as not to call further attention to the matter. Defense counsel agreed with the trial court's characterization and

asked for a mistrial on the basis of Joe's "non-responsive answers." The trial court denied the motion for mistrial. No instruction to disregard was requested.

A complaint regarding the admission of evidence may take three forms: (1) a timely, specific objection; (2) a request for an instruction to disregard; and (3) a motion for mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Generally, failure to object and to request an instruction to disregard fails to preserve the complaint for appellate review. *Id.* at 70. In this case, the trial court agreed that objecting and requesting an instruction to disregard would have drawn attention to the matter. We will thus assume without deciding that the mistrial ruling was preserved.

A witness's inadvertent reference to an extraneous offense would only necessitate a mistrial where that reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *See Rojas v. State,* 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *Kipp v. State,* 876 S.W.2d 330, 339 (Tex. Crim. App. 1994); *see also Young v. State,* 283 S.W.3d 854, 878 (Tex. Crim. App. 2009).

From the context of Joe's answers to defense counsel's questions that led to Joe's references to Brinegar's prior incarceration, it is clear the Joe's references were not calculated to inflame the minds of the jury. Rather, he was attempting to explain why there had been a time gap in the investigation and why there were no custody orders. Furthermore, applying the *Mosley* factors, we conclude that Joe's inadvertent references were not "so prejudicial that expenditure of further time and expense would be wasteful

and futile." We cannot say that the trial court erred in failing to grant a mistrial and overrule issue four.

Having overruled all of Brinegar's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
Affirmed
Opinion delivered and filed November 5, 2015
Do not publish
[CRPM]

